# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 20, 2013

## STATE OF TENNESSEE v. SCOTTY WAYNE POARCH

### Appeal from the Circuit Court for Marshall County
#### No. 2012-CR-40     Robert Crigler, Judge

### No. M2012-01979-CCA-R3-CD - Filed May 22, 2013

The Defendant, Scotty Wayne Poarch, challenges (1) the length of his sentence imposed by the trial court as a result of his guilty pleas and (2) the trial court's denial of alternative sentencing. After a review of the record and the applicable authorities, we discern no error in the trial court's determinations and affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Donna L. Hargrave, District Public Defender; Michael J. Collins and William Harold, Assistant Public Defenders; for the appellant, Scotty Wayne Poarch.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Associate Deputy Attorney General; Charles Crawford, District Attorney General; Weakley E. Barnard and Michael D. Randles, Assistant District Attorneys General; for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

The Defendant was indicted for the following offenses on March 21, 2012: Count 1, simple possession of marijuana, a Class A misdemeanor; Count 2, promotion of methamphetamine, a Class D felony; Count 3, initiation of a process intending to result in the manufacture of methamphetamine, a Class B felony; and Count 4, possession of drug paraphernalia, a Class A misdemeanor. On June 13, 2012, the Defendant entered open pleas to all the offenses as charged. The State offered the following facts as a basis for the guilty

pleas:

The factual basis occurred on September 23rd, 2011. Agents of the Drug Task Force observed the defendant leaving Food Lion Grocery and entering a car driven by Ronald Clark, Jr. They followed the vehicle. They observed it roll through a stop sign. They followed it out Verona-Caney Road. The vehicle pulled into the parking lot of Rock Creek Market.

The agents went by and pulled over in the church parking lot and then observed the vehicle then pull out of the convenience store parking lot and continue. Ultimately they conducted a traffic stop. They approached the driver's side and could see the defendant in the passenger seat[,] and it appeared as though he was furiously trying to stuff something in the glove box, trying to get the door shut and things like that.

They talked with the driver and got his driver license information. They could see in the floor board at the defendant's feet a Burger King bag and beside it was the blister packages for the Pseudoephedrine pills where I think it appeared the tablets had been punched out.

They got the defendant out of the vehicle and patted him down for a concern that he might have been stuffing a weapon in the glove box or something like that. Never mind he was acting very nervously.

They patted him down. They didn't discover any weapons. They asked if he had any weapons on him. They looked in the glove box and saw an open box of ammonium nitrate which, of course, is a component for the manufacture of meth.

They again conducted a pat down to make sure he didn't have any weapons[,] and they felt a small lump in his right butt pocket. They asked what it was and he said it was a small bag of marijuana. They recovered that and indeed it did appear to be a bag of marijuana.

They found some other items. I think placed the defendant under arrest and found some other items in the glove box consistent with the manufacture of methamphetamine.

They interviewed the driver. He indicated he acquired a couple of boxes of Sudafed tablets for the defendant who was going to convert it to meth

and return a portion of the finished product to the driver of the vehicle.

The defendant was advised of his <u>Miranda</u> rights[,] and he did admit that he had gotten back into making meth and he said he had some more items at his residence. He took them over there or went with them and turned over various items that clearly were being used to manufacture meth, including a previous one pot -- I think they also found a gasser; they found, I believe, pipes and aluminum foil which clearly had been used or were being used to ingest methamphetamine.

A sentencing hearing was held on August 8, 2012. At the hearing, Crystal Gray, employed with the Department of Correction in the probation and parole area, presented the Defendant's presentence report. Ms. Gray testified that the Defendant was on probation at the time of the current offenses and that a violation warrant was filed on October 17, 2012. The Defendant had previously violated his probation and that violation was sustained. She testified that, prior to that, the Defendant had also been placed on probation for driving offenses, which was suspended upon payment of fees. Ms. Gray stated that the Defendant had admitted to using "marijuana in the past up to two weeks before his arrest[;] he averaged a couple, under his wording, joints a day." On cross-examination, she testified that the Defendant had "a fairly significant employment history."

Shane George, an officer with the 17th Judicial District Drug Task Force, testified that he had been in that position for twelve years and that his main assignment was methamphetamine investigation: manufacture, possession, resale, et cetera. Agent George testified that he was certified in 2001 to clean up meth labs, that he had been working in investigations since that time, and that he had investigated "a couple of hundred actual labs and then numerous smaller offenses that are meth related, promotion-type of offenses over the course of the years." Agent George also testified that he had training regarding the "dangerousness of [meth] cooking methods and labs" as well as other yearly training classes. He agreed that people who violate the promotion statute and the initiation statute pose a risk that is high to human life, both theirs and others. Agent George was one of the officers who searched the meth lab at the Defendant's residence after the Defendant stated that he had gotten back into the cooking operation. Agent George testified,

prior to this investigation, as I stated before, I received accounts from individuals that he was reinvolved, had reinvolved himself back in cooking; that he was taking the Pseudoephedrine, manufacturing the methamphetamine, and ultimately redistributing it back to the individuals that were bringing the box of Sudafed which is pretty status quo for how the process works, out in the criminal element concerning the meth manufacturing.

Agent George stated that the Defendant's name had come up often in investigations and agreed that he would characterize the Defendant as a major contributor to the methamphetamine manufacturing problem in the district, explaining, "[t]he two handfuls of individuals I have interviewed since 2009, he is very prolific in manufacturing methamphetamine and putting it back out in the community."

Agent George testified that the Defendant and his girlfriend were living in the residence where the gasser and other components of a meth lab were located. He spoke with the Defendant's girlfriend, and she also told him that the Defendant "had reinvolved himself in manufacturing methamphetamine and knew that there were components in the house that had previously been used by [the Defendant] to manufacture methamphetamine. And that she had reinvolved herself with using the finished product also." Upon questioning by the court, Agent George agreed that confinement was particularly suited to provide an effective deterrent to people likely to commit these kinds of offenses.

At the close of proof, the Defendant offered the following allocution:

I just want to let you know when I got caught my head wasn't on right that day by being drug free.

I gave that up; trying to do the right thing.

I wanted to let the Court know. I know I was wrong. I have got a grand youngun. [sic] I think about my family now.

That was in my stupid days.

I wanted to let y'all know my head wasn't on right at that time. That is pretty much it.

In issuing its findings, the trial court noted the sentencing considerations and found the following enhancement factors applicable: (1) history of criminal convictions and criminal behavior – that the Defendant had admitted to officers that he had been manufacturing and using meth for personal use – to which he applied great weight; and (8) three probation violations, on which the court placed considerable weight. See Tenn. Code Ann. §40-35-114(1), (8). The trial court also found one mitigating factor, number (13), that the Defendant had cooperated with police and had entered open pleas. See Tenn. Code Ann. §40-35-113(13). The trial court explained that it was denying alternative sentencing for the following reasons:

He has a history of criminal conduct, long history of criminal conduct such that confinement is needed to protect society by restraining a defendant with that kind of history; confinement is also particularly suited to provide an effective deterrent to people likely to commit similar offenses; and also he has been on probation frequently and recently.

And that has been unsuccessful in deterring further criminal activity.

See Tenn. Code Ann. § 40-35-103(1)(A)-(C). The trial court sentenced the Defendant as a Range I, standard offender as follows: Count 1, eleven months and twenty-nine days; Count 2, three years; Count 3, ten years; and Count 4, eleven months and twenty-nine days. The sentences were to be served concurrently, for an effective ten-year sentence in Department of Correction (DOC).

## ANALYSIS

The Defendant contends that his sentence is excessive and contrary to law and that "[a] lesser sentence or probation would still achieve the necessary punishment while not consuming as much of the Department of Correction resources that would best be used on other offenders." The State responds that the trial court's sentence was appropriate and that alternative sentencing was properly denied because of the Defendant's criminal history and multiple failed probationary sentences. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor, the error will not remove the presumption of reasonableness from its sentencing determination. Bise, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id.

at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See Carter, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a), (b). Thus, the trial court was required to consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(a). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-303(b)). A defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Carter, 254 S.W.3d at 347 (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

After reviewing the record and the applicable authorities, we conclude that the trial court did not abuse its discretion in sentencing the Defendant to serve ten years in the DOC nor in denying all forms of alternative sentencing. The trial court applied two enhancement factors to justify the sentence imposed and one mitigating factor, and the record supports the application of those factors. The Defendant faced up to four years on Count 2 and up to twelve years on Count 3, but the trial court imposed concurrent, mid-range sentences. Although the trial court could have run the sentences consecutively because the offenses were committed while the Defendant was on probation, the trial court ordered the Defendant's sentences to be served concurrently. The within-range sentence is in compliance with the purposes and principles of sentencing, and there is no evidence to rebut the presumption of reasonableness afforded to the trial court. See Bise, 380 S.W.3d at 707; Caudle, 388 S.W.3d at 278-79.

In denying alternative sentencing, the trial court found that confinement was necessary to protect the public due to the Defendant's long history of criminal conduct and to provide an effective deterrent to people likely to commit similar offenses. The trial court also found that the Defendant had been on probation frequently and recently, and it had not deterred his criminal activity. In making the latter finding, the trial court considered this as evidence of his lack of potential for rehabilitation. The Defendant emphasizes that he was convicted of nonviolent offenses and argues that the DOC's scarce prison resources would be better used for violent criminals.[1] Our statutes favor sentences of incarceration for felons committing the most severe offenses as well as felons with criminal histories indicating a disregard for the law and past failure of rehabilitative efforts. The Defendant meets the last two criteria. The Defendant has made no additional arguments as to why he is suitable for alternative sentencing, and thus, has failed to meet his burden. Again, there is no evidence to rebut the presumption of reasonableness afforded the trial court in his sentencing determinations. Therefore, the Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record and the applicable law, we discern no reversible error and affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE

---

[1] Despite the Defendant's contention that prisons are overcrowded, there is no evidence in the record to support this argument. Thus, we will not consider it.